2007 ME 53

**David A. DALPHONSE et al.**

v.

**ST. LAURENT & SON, INC.**

Supreme Judicial Court of Maine.

Submitted On Briefs: March 29, 2007.

Decided: April 19, 2007.

David C. Pierson, Esq., Troubh Heisler Hark Andrucki, Lewiston, for plaintiffs.

James F. Martemucci, Esq., Martemucci & Topchik, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] David A. and Syrillyn L. Dalphonse appeal from a judgment entered in the Superior Court (Androscoggin County, *Delahanty, J.*), following a bench trial, awarding them damages and injunctive relief on their claims of trespass and nuisance resulting from St. Laurent & Son, Inc.'s operation of a gravel pit adjacent to their property. The Dalphonses challenge the court's calculation of damages and the denial of their motion to reopen the record regarding damages, which they filed before the entry of judgment, but more than two years after the date of trial. We affirm the judgment on issues of liability, but because we conclude that the court abused its discretion in denying the Dalphonses' motion to reopen the record and acted under a mistake of fact when it calculated damages, we vacate the court's denial of the Dalphonses' motion to reopen the evidence and its award of damages for reclamation.

## I. BACKGROUND

[¶ 2] This case arises from St. Laurent's operation of a gravel pit adjacent to the Dalphonses' property, resulting in the collapse of a portion of the Dalphonses' property into the steep-sloped pit. The court found the following facts, which the record supports.

[¶ 3] In 1999, St. Laurent and Marcel Chamberland, the prior owner of the Dalphonses' property, executed an agreement that allowed St. Laurent to excavate part of Chamberland's property to lower and cut back the steep banking into St. Laurent's adjacent sand and gravel pit. This agreement was never recorded in the registry of deeds.

[¶ 4] Unbeknownst to St. Laurent, Chamberland sold his property to the Dalphonses by a deed dated May 7, 2001. For three weeks after the closing, the Dalphonses observed no activity in the pit. On May 29, however, David Dalphonse discovered a bucket loader with a St. Laurent logo operating near the center of the east line of the Dalphonses' property. The digging appeared to encroach four to eight feet onto the Dalphonses' property.

[¶ 5] Although David spoke with St. Laurent's proprietors and complained to the Town and the police, St. Laurent continued pit operations. Further, to retaliate against David for seeking assistance from the police, St. Laurent placed two large boulders in the right-of-way that the Dalphonses had been using to access their garage. Because of these boulders, the Dalphonses delayed their move into their house, had to use wheelbarrows to haul crushed stone and firewood to the rear of the house, and incurred damage to a vehicle when David used an alternate route.

[¶ 6] The Dalphonses filed a complaint in the Superior Court in June 2001 and applied for a temporary restraining order. Before a hearing was held, the parties reached a consent agreement that prohibited St. Laurent from digging within twenty feet of the Dalphonses' property line and provided that the Dalphonses would

not remove the boulders that St. Laurent had placed in the right-of-way.[1] The parties filed this consent agreement with the court on June 25, 2001.

[¶ 7] The next day, the Dalphonses filed their first amended complaint—the operative complaint in this matter—against St. Laurent, Chamberland, and a neighbor named Anthony Crowley. The Dalphonses sought damages and injunctive or declaratory relief against St. Laurent arising from statutory trespass, 14 M.R.S. §§ 7551–B and/or 7552 (2006); common law trespass; and nuisance. St. Laurent and Chamberland answered the Dalphonses' complaint and filed cross-claims against each other. The claims against Crowley were dismissed by agreement of all parties; Chamberland settled with the Dalphonses and St. Laurent; and the Dalphonses and St. Laurent proceeded to a nonjury trial on August 14 and 15, 2003.

[¶ 8] At trial, the Dalphonses called George Courbron Jr., a land use consultant, as an expert. Courbron provided seven alternative proposals for reclamation of the Dalphonses' land and diagramed them in different colors on a chart depicting the existing slope. One of these alternatives proposed creating a 2.5–to–1 slope from the existing edge using 7,250 cubic yards of fill. Courbron testified that the cost of this "Red Line Option" was $33,000. In reaching this estimate, Courbron assumed that the materials necessary for fill would be drawn from the St. Laurent gravel pit at no cost to the Dalphonses.

[¶ 9] When the court had not entered a judgment by September 19, 2005, more than two years after the trial, the Dalphonses moved to reopen the evidence on the ground that they had sustained further damages while awaiting the court's decision. Specifically, the Dalphonses asserted that they had incurred damages of $9,000 in extra construction costs during the rebuilding of their home because they could not have items delivered past the boulders, $5,000 in lost garage rental income, and $3,000 in loss of land due to erosion into the pit. St. Laurent opposed the motion, arguing that the Dalphonses were attempting to raise new issues unrelated to the trial and that St. Laurent would be prejudiced by the reopening of the evidentiary record.

[¶ 10] On May 17, 2006, the Court denied the motion to reopen the evidence without prejudice because it "raise[d] issues not previously discussed or raised by evidence or pleadings." At the same time, the court issued its judgment. The court found St. Laurent liable for damages of $6,295 for the roughly 1,481 cubic yards of land the Dalphonses had lost through St. Laurent's statutory trespass. *See* 14 M.R.S. § 7552. The court also awarded the Dalphonses damages of $19,397.50 pursuant to the trespass statute to cover the cost of professional services the Dalphonses had obtained to establish the trespass and the consequent damages. *Id.*[2]

[¶ 11] The court also found that the Dalphonses were entitled to reclamation of their property and directed that the pit be filled to restore the Dalphonses' eastern boundary to its previous height, with a 2–

---

1. Because pit operations beyond twenty feet from the Dalphonses' property line were causing further erosion, the court granted the Dalphonses a temporary restraining order before trial that expanded the prohibition on excavation to fifty feet from the Dalphonses' property line.

2. The statute permits the owner to recover "the reasonable costs of professional services necessary for determining damages and proving the claim." 14 M.R.S. § 7552(5) (2006).

to–1 grade running from that boundary line to the floor of the St. Laurent pit. The court estimated that the cost would be just slightly more than the cost of executing the Red Line Option, which would have involved a 2.5–to–1 grade from the existing edge of the banking at a cost of $32,000.[3] The court awarded the Dalphonses $32,500 as the cost of reclamation, noting that, as compared to the Red Line Option, the line it had established would require "more fill at the top to resolve the height of the land."

[¶ 12] The court also granted the Dalphonses injunctive relief. The court ordered that reclamation be conducted under the supervision and according to the plan of a qualified individual selected by the Dalphonses. The court required the Dalphonses to supply St. Laurent with a copy of the plan, which would trigger a fourteen-day period for objections and a dispute resolution process that relied on negotiations between third-party experts representing each party. The court also required St. Laurent to provide the Dalphonses' representatives reasonable access to its property to carry out the plan. The court ordered that, when the reclamation was complete, the parties were not to enter upon each other's land and St. Laurent was not to conduct excavation or pit operations in the reclaimed area or within fifty feet of the Dalphonses' property line.

[¶ 13] Regarding the nuisance claim, the court found that the Dalphonses had failed to establish that the operation of the pit was a public nuisance and had only established a mild private nuisance. The court awarded nominal damages of $100 for the private nuisance arising from pit operations. Regarding the private nuisance alleged to have arisen from the *placement of*

*the boulders*, however, the court found St. Laurent liable because it had intentionally and maliciously interfered with the Dalphonses' enjoyment of their property by placing the boulders in the right-of-way. The court awarded the Dalphonses $1,100 in compensatory damages and $5,000 in punitive damages for this private nuisance and ordered St. Laurent to remove the boulders from the right-of-way.

[¶ 14] The total resulting award for the Dalphonses was $64,392.50. The following table expresses the breakdown of this total:

| Item | Damages |
| --- | --- |
| Land Lost through Trespass (1,481 cubic yards) | $ 6,295.00 |
| Reclamation Costs | 32,500.00 |
| Private Nuisance: Operation of Pit | 100.00 |
| Private Nuisance: Boulders (compensatory & punitive damages) | 6,100.00 |
| Cost of Professional Services | 19,397.50 |
| **TOTAL DAMAGES** | **$64,392.50** |

The Dalphonses timely appealed from the judgment.

## II. DISCUSSION

### A. Motion to Reopen the Evidentiary Record

■ [¶ 15] The Dalphonses contend that the court abused its discretion in denying their motion to reopen the evidentiary record to allow evidence of further damages incurred between the trial and the entry of judgment. They argue that they were not raising new issues but were instead attempting to offer evidence of further damages resulting from continued erosion of their land into the pit and from the obstruction of their driveway.

---

3. Although the court stated that it was relying on Courbron's testimony, Courbron actually testified that this option would cost $33,000.

[¶ 16] "A party who has rested cannot thereafter introduce further evidence except in rebuttal unless by leave of court." M.R. Civ. P. 43(j). "The trial court has discretion in determining whether a party may reopen its case after the close of the evidence." *In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148, 1149; *see also New Eng. Hotel Realty, Inc. v. Finley*, 508 A.2d 121, 122 (Me.1986). A court should permit the presentation of additional evidence if doing so will prevent an unfair result. *Ringuette v. Ringuette*, 594 A.2d 1076, 1078 (Me.1991); *New Eng. Hotel Realty, Inc.*, 508 A.2d at 122. The court may consider other factors as well, including whether allowing additional evidence would be necessary for an accurate adjudication, would give the court a more complete picture, or would create any unfair disadvantage to the other party. *Dep't of Human Servs. v. Thibeault*, 561 A.2d 486, 487 (Me.1989).

[¶ 17] Here, the court's rationale for denying the motion to reopen the record was that the motion "raise[d] issues not previously discussed or raised by evidence or pleadings." In examining the additional damages described in the motion, however, it is evident that these asserted damages relate to the continued effects of St. Laurent's placement of the boulders and the continued erosion of the Dalphonses' property as a result of the St. Laurent gravel pit. The court did not enter a judgment for nearly three years after conducting the trial. Although the Dalphonses bargained for the boulders to remain in place pending the outcome of the trial, they could not reasonably have predicted that the boulders would remain in place for nearly three years while awaiting a decision from the court.

[¶ 18] In these circumstances, to avert an unfair result, the court should have allowed the Dalphonses to present additional evidence to support the categories of damages claimed in their motion to reopen.[4] We therefore vacate the denial of the Dalphonses' motion and remand the matter to afford both parties the opportunity to present evidence regarding the damages described in the Dalphonses' motion to reopen.

B. Damages for Reclamation

[¶ 19] The Dalphonses also argue that, because Courbron relied on the cost-free use of St. Laurent's gravel in reaching his estimates, the court's award of damages based on those estimates was too low to cover the cost of the court-ordered reclamation.

[¶ 20] Although in general, we will not disturb the fact-finder's award of damages, we will vacate an award if the fact-finder found damages in disregard of the facts. *Carter v. Williams*, 2002 ME 50, ¶ 27, 792 A.2d 1093, 1100.

[¶ 21] Here, the court compensated the Dalphonses for the land they lost and awarded them the cost of labor for reclamation. The court did not award damages, however, to cover the additional cost of the fill necessary to restore the Dalphonses' land to their boundary line with a 2-to-1 slope running from that line to the St. Laurent gravel pit floor. Although the absence of an award of damages to cover the cost of fill appears to have been inadvertent, it does result in inadequate damages for the completion of the court-ordered reclamation project. Accordingly, we vacate the court's award of damages for the reclamation and re-

---

4. We recognize that the delay in entry of the judgment exacerbated the effects of St. Laurent's wrongful actions, and we leave it to the trial court to fashion a remedy that is appropriate under these circumstances.

mand the matter for the court to recalculate these damages.[5] The court may also consider whether the passage of time has altered the cost of reclamation.

[¶ 22] We do not disturb the court's award of other categories of damages for nuisance, trespass, or the cost of professional services already rendered. Nor do we disturb the terms of the reclamation plan described by the court in its judgment. On remand, the court should allow the introduction of evidence regarding only the cost of additional fill necessary to execute the reclamation and any additional damages incurred after the August 2003 trial.

The entry is:

Denial of motion to reopen the record vacated. Award of damages for reclamation vacated. In all other aspects, the judgment is affirmed. Remanded for further proceedings solely to determine damages for the cost of the additional fill necessary to complete reclamation as described in the court's judgment and to assess whether to award any additional damages incurred since trial as requested in the motion to reopen.

5. Although the parties argue that St. Laurent should be allowed to conduct the reclamation itself, we conclude that, given the level of acrimony between the parties, the court acted well within its discretion in awarding damages to permit reclamation by a third party, rather than entering a judgment that would require St. Laurent employees to be on the Dalphonses' property.